Ira M. Siegel, Cal. State Bar No. 78142
email address:  irasiegel@earthlink.net
LAW OFFICES OF IRA M. SIEGEL
433 N. Camden Drive, Suite 970
Beverly Hills, California 90210-4426
Tel:    310-435-7656
Fax:    310-657-2187

Attorney for Plaintiff Patrick Collins, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Oakland Division

| | |
|---|---|
| Patrick Collins, Inc., a California corporation, | **CASE NO. CV 10-05886 LB** |
| Plaintiff, | **PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE** |
| v. | |
| DOES 1-3757, | |
| Defendants. | |

TABLE OF CONTENTS

I.      INTRODUCTION AND FACTUAL BACKGROUND ........................................1

II.     ARGUMENT ...........................................................................................3

        A.      A Court May Allow Early Discovery, and Should Do
                So in this Case..........................................................................3

        B.      The Discovery Sought by Plaintiff Is Reasonably
                Likely to Lead to Identifying Information About
                Defendant That Would Make Service of Process
                Possible ....................................................................................6

        C.      Neither First Amendment Nor Privacy Rights Preclude
                Discovery ..................................................................................6

                1.  First Amendment Rights Are Not Abrogated Here ...................6

                2.  Privacy Rights Are Not Abrogated Here ...............................7

                        (a) There Is No Reasonable Expectation of
                        Privacy Here...................................................................7

                        (b) 47 U.S.C. § 551 Does Not Preclude
                        Compliance With the Subpoenas ......................................7

        D.      The Exemplary Subpoena Will Elicit the Required
                Information ................................................................................7

        E.      Judges of this District Have Granted Similar Orders.................8

        F.      Joinder of Defendants Is Appropriate, and, Even if in
                Doubt, Should Not Be a Bar to the Discovery Sought
                at this Stage of Litigation ...........................................................8

III.    THERE IS NO NEED FOR TENDERING WITNESS AND
        MILEAGE FEES .......................................................................................11

IV.     CONCLUSION.........................................................................................12

TABLE OF CASES

Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240
        (3d Cir. 1983)...............................................................................4

Call of the Wild Movie, LLC v. Does 1-1,062, (D. DC 2011),
        decided March 22, 2011..................................................................10

Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573 (N.D. Cal. 1999) ...................................................................................4, 5

Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980) .........................4

Martindale v. Windsor, 75 F.R.D. 665 (D. Colo. 1997) ...................11

Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273 (N.D. Cal. 2002).......................................................................................4

Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .....................................................................6, 7

UMG Recordings, Inc. v. Does 1-4, No. 06-0652 SBA, 2006 U.S. Dist. LEXIS 32821 (N.D. Cal. Mar. 6, 2006) .........................7

United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966) .............9

Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 f(D. Ariz. 2001)......................................................................4

Case No. C 10-04468 LB ...................................................................8

Case No. C 10-04471 MEJ ................................................................8

Case No. C 10-05885 JCS .................................................................8

TABLE OF STATUTES AND RULES

Article I, Section 8, Clause 8 of the United States Constitution....................6

First Amendment of the United States Constitution .........................6

17 U.S.C. § 101 et seq.....................................................................10

17 U.S.C. § 106................................................................................5

47 U.S.C. § 551 (Cable Communications Policy Act of 1984) .........7

Rule 6(c)(1)(C) of the Federal Rules of Civil Procedure...................1

Rule 20 of the Federal Rules of Civil Procedure .............................8

Rule 26 of the Federal Rules of Civil Procedure .............................3

Rule 45 of the Federal Rules of Civil Procedure .................3, 11, 12

1    Plaintiff Patrick Collins, Inc. makes this Ex Parte Application for Leave to Take Limited

2    Discovery Prior to a Rule 26 Conference because, without such discovery, Plaintiff will not be

3    able to identify the Defendants with sufficient particularity to effect service of process.  This Ex

4    Parte Application is supported by the memorandum set forth below and the concurrently-filed

5    Declaration of Jon Nicolini and Declaration of Ira M. Siegel.

6    Plaintiff could not obtain a stipulation for this Ex Parte Application because Plaintiff

7    cannot identify the Doe Defendants with whom to confer until the requested discovery takes

8    place.  Siegel Decl., par. 2.

9    Federal Rule 6(c)(1)(C) of the Federal Rules of Civil Procedure, relating to times for

10    filing motions and setting hearings, provides that for good cause a party may apply ex parte for

11    setting a different time to file a motion with respect to a hearing date. Because there is currently

12    no Defendant in this case to oppose any motion, or upon whom to serve a copy of a motion or ex

13    parte application, there would be no opposition if a motion were filed instead of a an ex parte

14    application.  Siegel Decl., par. 2.  Therefore, no briefing schedule need be set.

15 **I.    INTRODUCTION AND FACTUAL BACKGROUND**

16    Plaintiff is a motion picture production company.  The work at issue in this case (the

17    "Work") is titled "Tori Black Is Pretty Filthy" and is registered in the United States Copyright

18    Office:  Registration Number PA 1-670-805.  The Work and the copyright therein are owned by

19    Plaintiff.   Complaint, par. 7 and 8.  Nicolini Decl., par. 10 and 13.

20    Defendants Does 1-3757, many of whom are residents of this judicial district, have,

21    without the consent of Plaintiff, cooperatively acted with each other to distribute among

22    themselves unauthorized copies of the Work.  On information and belief, more than 1 out of

23    every 7 of the Defendants' IP addresses is physically located in California, and of those, more

24    than 1 out of every 4 is in this judicial district.  Complaint, par. 10 and 11.  Nicolini Decl., par.

25    23.

26    Defendants engaged and continue to engage in infringement of Plaintiff's copyright

27    through online media distribution systems.  Users such as Defendants download software to their

28    computers that allows them to join file-sharing networks, often referred to as a "peer to peer" or a

1   "P2P" networks, to locate and transfer files to and from other users.  In order to use the software

2   to locate and exchange files, a user connects to the Internet.  Nicolini Decl., par. 4-9.

3     Users subscribe to the services of an Internet Service Provider ("ISP"), such as the ISPs

4   listed in **Exhibit A** attached to the  Complaint (and, for the Court's convenience, to the Nicolini

5   Declaration), to gain access to the Internet.  Each time a subscriber accesses the Internet, the ISP

6   provides a unique Internet Protocol ("IP") address to the subscriber.  An ISP generally records

7   the times and dates that it assigns each IP address to a subscriber and maintains for a period of

8   time a record of such an assignment in logs maintained by the ISP.  In addition, the ISP

9   maintains records which typically include the name, one or more address, one or more telephone

10  numbers, and one or more email addresses of the subscriber.  Nicolini Decl., par. 18.

11    P2P technology relies on the ability to identify the computers to and from which users

12  can search and exchange files.  The technology identifies those computers by the IP address from

13  which the computer connects to the Internet.  Taking advantage of this technology, Plaintiff's

14  contractor, Copyright Enforcement Group, LLC ("CEG"), inspects file-sharing networks for

15  computers that are distributing at least a substantial portion of a copy of a copyrighted work

16  owned by Plaintiff, and when CEG finds such a computer, CEG records the IP address of the

17  computer and the date and time ("Timestamp") of the recording.  In addition, CEG uses available

18  databases to record the name of the ISP having control of the IP address and the state (and often

19  the city) associated with that IP address.  However, because of the partially anonymous nature of

20  the P2P Internet distribution system used by Defendants, the true names, street addresses,

21  telephone numbers and email addresses of Defendants are unknown to Plaintiff at this time.

22  CEG also downloads the available file from a subscriber's computer, and later runs visual

23  observations to confirm whether or not the file is a copy of at least a substantial portion of a

24  copyrighted work of Plaintiff.  CEG has confirmed that each of the files obtained from the

25  Defendants that are listed in **Exhibit A** is a copy of a substantial portion of the copyrighted work

26  listed in **Exhibit A**.  Nicolini Decl., par. 17-19.

27    ISPs maintain for certain periods of time subscriber activity logs that contain information

28  linking an IP address and the Timestamp to the identity of the Defendant-subscriber.  At some

1   point in time, ISPs typically destroy such information.  ISPs also maintain records that include

2   their respective subscribers names, addresses, telephone numbers, and email addresses.  With an

3   IP address and Timestamp, the ISP having control of an IP address can identify and produce the

4   logs and records that include the Defendant's name, address, telephone number, and email

5   address.  Currently, that information (i.e., subscriber identifying information associated with

6   each IP address/Timestamp combination) is known by, and only by, the ISP.  Nicolini Decl., par.

7   18-20, and 22.

8   **Exhibit A** lists on a Defendant-by-Defendant basis (one Defendant per row) the Work,

9   and its copyright registration number, the IP address associated with each Defendant, the identity

10  of the ISP associated with the IP address, the last-observed date and time (the Timestamp

11  referred to earlier) that the infringement by that Defendant was last observed, and the software

12  protocol used by the Defendant.  Nicolini Decl., par. 21.

13  Plaintiff seeks leave from the Court to serve a Rule 45 third-party subpoena on each ISP

14  listed in **Exhibit A** prior to a Rule 26 Case Management Conference.

15  **II.   ARGUMENT**

16  **A.   A Court May Allow Early Discovery, and Should Do So in this Case**

17  Rule 26(d) of the Federal Rules of Civil Procedure provides that, unless authorized by,

18  among other authorities, a court order, discovery from no source may be had until the parties

19  have conferred as required by Rule 26(f).

20  Here, of course, because of the semi-anonymity of the Defendants, no meeting with any

21  of them can be had at this time, and ISPs generally retain their logs only for relatively brief

22  periods of time.  Without expedited discovery (i.e., discovery before a Rule 26(f) conference),

23  Plaintiff will not be able to obtain the true identities of the infringers and obtain redress for the

24  infringements.  Nicolini Declaration, par. 7-8, 18-20, 22-24.

25  This problem, of course, is not unique to the Plaintiff in this case.

26  "[S]ituations arise, such as the present, where the identity of alleged defendants
    will not be known prior to the filing of a complaint.  In such circumstances, the

27  plaintiff should be given an opportunity through discovery to identify the unknown
    defendants, unless it is clear that discovery would not uncover the identities, or that

28  the complaint would be dismissed on other grounds."

1    Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).

2          The Internet has allowed the problem to worsen.

3                "With the rise of the Internet has come the ability to commit certain tortious
           acts, such as defamation, copyright infringement, and trademark infringement,
4          entirely on-line. The tortfeasor can act pseudonymously or anonymously and may
           give fictitious or incomplete identifying information. Parties who have been
5          injured by these acts are likely to find themselves chasing the tortfeasor from
           Internet Service Provider (ISP) to ISP, with little or no hope of actually
6          discovering the identity of the tortfeasor. In such cases the traditional reluctance
           for permitting filings against John Doe defendants or fictitious names and the
7          traditional enforcement of strict compliance with service requirements should be
           tempered by the need to provide injured parties with an forum in which they may
8          seek redress for grievances."

9    Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 577 (N.D. Cal. 1999).

10         As set forth in Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D.

11   Cal. 2002), the conventional standard of good cause is used in evaluating a request for expedited

12   discovery.  Semitool explained further,

13               "Good cause may be found where the need for expedited discovery, in
           consideration of the administration of justice, outweighs the prejudice to the
14         responding party. It should be noted that courts have recognized that good cause
           is frequently found in cases involving claims of infringement and unfair
15         competition."

16   See, also, Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz.

17   2001).

18         Here, and in similar cases, the burden of responding to subpoenas must be borne by all in

19   the normal course of administering justice.  Without the expedited discovery, Plaintiff will be

20   prejudiced to the extent of foreclosing its ability to obtain redress for infringement of its

21   copyrights.  Further, although not necessary to this analysis, copyright infringement is presumed

22   to cause irreparable harm.  Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240,

23   1254 (3d Cir. 1983).

24         When the identity of defendants is not known before a complaint is filed, a plaintiff

25   "should be given an opportunity through discovery to identify the unknown defendants, unless it

26   is clear that discovery would not uncover the identities, or that the complaint would be dismissed

27   on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  In evaluating

28   whether a plaintiff establishes good cause to learn the identity of Doe defendants through early

1    discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient

2    specificity that the court can determine that the defendant is a real person who can be sued in

3    federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates

4    that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to

5    lead to identifying information that will permit service of process.  Columbia Ins. Co. v.

6    Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

7        Plaintiff has sufficiently specified the identity of each Defendant by the unique IP address

8    and Timestamp associated with that Defendant when the Defendant committed infringement of

9    Plaintiff's copyrighted Work, as set forth in **Exhibit A**.   Nicolini Decl., par. 18.

10       Plaintiff has done all it could do to identify the Defendants by obtaining with respect to

11    each Defendant the IP address, the Timestamp and the identity of the ISP.  Thus, the necessity of

12    conducting discovery through subpoenas.  Nicolini Decl., par. 18, 19.

13       As noted above, Plaintiff alleges in its  Complaint that (i) it owns the copyright in the

14    Work and the copyright registration covering the work, and that (ii) each Defendant listed in

15    **Exhibit A** has, without permission or consent of Plaintiff, reproduced and distributed to the

16    public at least a substantial portion of Plaintiff's copyrighted Work.  Plaintiff has pled the

17    essential elements to state a claim for copyright infringement against for copyright infringement

18    under 17 U.S.C. § 106(1) and (3) that would withstand a motion to dismiss.  In addition, CEG

19    has confirmed that the Defendants listed in Exhibit A infringed the copyright in the Work.

20    Nicolini Decl., par. 17, 18 and 22.

21       The requested discovery by subpoena is necessary for Plaintiff to determine the true

22    name and address of the individuals who performed the infringing acts.  All concerns to avoid

23    abuse are satisfied in this case.

24

25

26

27

28

**B. The Discovery Sought by Plaintiff Is Reasonably Likely to Lead to Identifying Information About Defendant That Would Make Service of Process Possible**

The court in <u>Columbia Ins. Co. v. Seescandy.com</u>, 185 F.R.D. 573, 580 (N.D. Cal. 1999), citing <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980), ruled that a plaintiff should show that the discovery it seeks will be reasonably likely to lead to identifying information about defendants that would make service of process possible. As explained above, ISPs have logs and records that will link the IP address/Timestamp combination with a subscriber's name, address, telephone number and email address. With that information, Plaintiff will have sufficient information to name Defendants for purposes of issuing a summonses and making a reasonable attempts to serve them. Siegel Decl., par. 3.

**C. Neither First Amendment Nor Privacy Rights Preclude Discovery**

**1. First Amendment Rights Are Not Abrogated Here**

Plaintiff recognizes that there may be concern regarding First Amendment-free speech or privacy issues. The right of free speech is no more implicated in this case than in a case in which someone uses a DVD recorder to make and distribute to others copies of a motion picture. The Constitution itself, at Article I, Section 8, Clause 8, empowers Congress to providing for an author's exclusive rights to his works.

While First Amendment-free speech rights extend to anonymous speech on the Internet,

> "Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amendment, for example, does not protect copyright infringement, and the Supreme Court, accordingly, has rejected First Amendment challenges to copyright infringement actions. See, e.g., *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56, 569, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Universal City Studios, Inc. v. Reimerdes*, 82 F.Supp.2d 211, 220 (S.D.N.Y.2000) (the "Supreme Court ... has made it unmistakably clear that the First Amendment does not shield copyright infringement"). Parties may not use the First Amendment to encroach upon the intellectual property rights of others. See *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir. 1990)."

<u>Sony Music Entertainment Inc. v. Does 1-40</u>, 326 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2004).

While a person who uses the Internet to download or distribute copyrighted works without permission may be engaging in speech, that person is engaging in speech only to a

1    limited extent, and the First Amendment does not protect the person's identity from disclosure.

2    Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556, 558 (S.D.N.Y. 2004).

3                    **2.      Privacy Rights Are Not Abrogated Here**

4                    **(a) There Is No Reasonable Expectation of Privacy Here**

5            With respect to a purported right of privacy, the Defendants have little expectation of

6    privacy because they opened their computers to others through peer-to-peer file sharing. See,

7    e.g., UMG Recordings, Inc. v. Does 1-4, No. 06-0652 SBA, 2006 U.S. Dist. LEXIS 32821 at *8-

8    9 (N.D. Cal. Mar. 6, 2006).

9                    **(b) 47 U.S.C. § 551 Does Not Preclude Compliance With the Subpoenas**

10           Some ISPs may assert that the Cable Communications Policy Act of 1984, 47 U.S.C. §

11   551, prohibits disclosure of subscriber identities without the prior written or electronic consent of

12   the subscriber or a court order.  They would be wrong since the names and addresses of such

13   subscribers may be disclosed if the cable operator has provided the subscriber the opportunity to

14   prohibit or limit such disclosure. 47 U.S.C. § 551(c)(2)(B) provides as follows:

15           "(c) Disclosure of personally identifiable information
                                        ***
16           "(2) A cable operator may disclose such information if the disclosure is—
                                        ***
17
             "(B) subject to subsection (h) [relating to disclosures to governmental
18           agencies] of this section, made pursuant to a court order authorizing such
             disclosure, if the subscriber is notified of such order by the person to
19           whom the order is directed . . . ."

20   In the order proposed by Plaintiff, provision is made for ISP's to given notice of the order.

21   Therefore, Plaintiff requests that the Court include in its order a statement that its order and the

22   subpoena are appropriate under 47 U.S.C. § 551.

23           **D.      The Exemplary Subpoena Will Elicit the Required Information**

24           Plaintiff requests that the Court issue an order allowing Plaintiff to immediately serve

25   (i.e., before a Rule 26(f) conference) a subpoena on each of the ISPs listed in **Exhibit A** in

26   substantially the same form as the example attached hereto as **Exhibit 1**.  The example subpoena

27   identifies an ISP as the recipient of the subpoena, and requests that the recipient produce,

28

"Documents sufficient to identify the names, addresses, telephone numbers, and e-mail addresses of [ISP's] subscribers assigned the IP addresses identified on Attachment A on the corresponding dates at the corresponding times.  You are to comply with this subpoena pursuant to the terms set forth in the Order attached hereto as Attachment B."

Attachment A is a sample of a list, that would be compiled from **Exhibit A**, of Doe Defendants with IP addresses and Timestamps corresponding to the ISP to be served with the subpoena. Attachment B will be the order as signed by the Court.

The information sought by the subpoena will be sufficient to enable Plaintiff to identify the Doe Defendants and facilitate service of process.

### E.     Judges of this District Have Granted Similar Orders

Judges of this District have issued similar orders. Chief Magistrate Judge Maria-Elena James, in Case No. C 10-04471 MEJ, and Magistrate Judge Laurel Beeler, in Case No. C 10-04468 LB, issued such orders in cases substantially the same as the instant case.  Siegel Decl., par. 4 and **Exhibit B** and **Exhibit C** attached thereto.

### F.     Joinder of Defendants Is Appropriate, and, Even if in Doubt, Should Not Be a Bar to the Discovery Sought at this Stage of Litigation

Plaintiff notes that Magistrate Judge Joseph C. Spero recently denied without prejudice a similar ex parte application in Case No. C 10-05885 JCS because he wanted a showing about the appropriateness of joinder of the defendants.

The controlling rule is Fed. R. Civ. P. 20.  It states in pertinent part,

Rule 20. Permissive Joinder of Parties
(a) Persons Who May Join or Be Joined.
                *** 
(2) Defendants.
Persons * * * may be joined in one action as defendants if:
       (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
       (B) any question of law or fact common to all defendants will arise in the action.
(3) Extent of Relief.
Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more

plaintiffs according to their rights, and against one or more defendants according to their liabilities.

(b) Protective Measures.

The court may issue orders — including an order for separate trials — to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

In this case, Plaintiff alleges that all the Doe defendants have engaged in the same transaction, occurrence, or series of transactions or occurrences, namely, that each of the Doe defendants has infringed the same copyrighted work, and that they did so using the same scheme, namely using a BitTorrent P2P network, in cooperation with each other.  Complaint, par. 10. Plaintiff further alleges that the Doe defendants have cooperated with each other. Complaint, par. 11.  The allegations are supported by the Nicolini Declaration.  See, for, example par. 22 of the Nicolini Declaration wherein Mr. Nicolini testified, among other things,

"the hashes associated with the torrent files on the computers having the IP addresses and time stamps listed in **Exhibit A** are all identical to each other, that is, they all have the same hash.  This demonstrates that all the Doe defendants listed in **Exhibit A** joined the same swarm."

In addition, according to BitTorrent, Inc. itself, the very purpose of the BitTorrent protocol is to allow people to **both** download a file and for them to upload what they had downloaded to others.  Nicolini Decl., par. 7.

The foregoing allegations also demonstrate that there are common questions of law and fact common to all defendants that may arise in this action, including whether or not each defendant infringed the single copyright in suit.

With respect to protection of defendants, the Proposed Order already contains a provision (par. 9) that "any information disclosed to Plaintiff in response to a subpoena may be used by Plaintiff solely for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. § 101 et seq."

A case on point was recently decided by the Judge Beryl A. Howell of the District Court of the District of Columbia.  That case is <u>Call of the Wild Movie, LLC v. Does 1-1,062</u>, (D. DC 2011), decided March 22, 2011.  The opinion, which also involved two other cases, with total of 5583 Doe defendants being involved, is attached hereto as **Exhibit 2**.  In that case, ISP Time Warner Cable sought to quash the subpoenas seeking information about the Doe defendants' identities.  Three putative defendants and Amici Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital, supported Time Warner Cable's motion to quash, challenging, among other things, the appropriateness of joinder.  Pages 6-13 of Judge Howell's decision discuss in detail why joinder, particularly at this stage of litigation, is proper in cases such as the instant case.  Of particular interest is this observation by Judge Howell at pages 12-13:

> "The plaintiffs, by contrast, are currently obtaining identifying information from ISPs so that they can properly name and serve the defendants. If the Court were to consider severance at this juncture, plaintiffs would face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their cases. The plaintiffs would be forced to file 5,583 separate lawsuits, in which they would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit their ability to protect their legal rights. This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.' *Lane,* 2007 WL 2007493, at *7 (declining to sever defendants where 'parties joined for the time being promotes more efficient case management and discovery' and no party prejudiced by joinder).
>
> "Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner. Indeed, Time Warner urges the Court to sever the defendants for this very reason. Time Warner asserts that, if joinder were disallowed, its burden of complying with subpoenas would be diminished because the plaintiffs would not be able to proceed against all of the putative defendants individually. *See* Transcript of Mot. Hearing, 14-16, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011).
>
> "At this procedural juncture, the plaintiffs have met the requirements of permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely benefited by joinder, and severance would debilitate the plaintiffs' efforts to protect their copyrighted materials and seek redress from the putative defendants who have allegedly engaged in infringing activity. Courts are

instructed to "entertain[] the broadest possible scope of action consistent with fairness to the parties.'" *Lane,* 2007 WL 2007493, at *7. While this Court is fully cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers *pro se,* severing the putative defendants is no solution to ease the administrative burden of the cases. The Court therefore declines to sever the putative defendants at this time."

## III.   THERE IS NO NEED FOR TENDERING WITNESS AND MILEAGE FEES

The subpoenas to be issued will be only for production of documents and records.  No appearance at a deposition will be required.

Rule 45(b)(1) provides (with emphasis added):

"Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, **if the person's attendance is commanded**, by tendering to that person the fees for one day's attendance and the mileage allowed by law."

However, Rule 45(c)(2)(A) provides (with emphasis added):

"Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises **need not appear in person at the place of production or inspection unless also commanded to appear for a deposition**, hearing, or trial."

In Martindale v. Windsor, 75 F.R.D. 665, 670 (D. Colo. 1997), third party witnesses, who were only required to produce documents, sought to quash subpoenas on the ground that witness and mileage fees had not been tendered.  The court declined to do so, ruling that such fees are not required where production, but no appearance, is required by a subpoena:

"Plaintiff's response to the issue of witness fees is to argue that he was not requesting an appearance of either individual, only production of the documents. In this case, Marr and Kurtz are both employed at AVCF. They were both served at AVCF. Therefore, no mileage would be appropriate and no requirement was made that either individual appear for a deposition. They only had to produce the documents. Both argue that '[b]asically, this is a records deposition ...' Motion to Quash, p. 3. The subpoena compels nothing more than production of the documents. There was no need to attend any deposition. In this case, there was no requirement that a witness fee and mileage be tendered along with the subpoena."

To avoid confusion in the event that an ISP insists upon advance payment of witness and mileage fees, Plaintiff requests that the Court's order specify that witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not apply.  The Proposed Order includes provisions in this regard.

1

**IV.     CONCLUSION**

2

In view of the foregoing, Plaintiff respectfully requests that its Ex Parte Application be

3

granted, and that the Court enter an order substantially in the form of the Proposed Order filed

4

concurrently herewith.

5

Respectfully submitted,

6

7

Date:  April 12, 2011

8

Ira M. Siegel, Cal. State Bar No. 78142
email address:  irasiegel@earthlink.net

9

LAW OFFICES OF IRA M. SIEGEL
433 N. Camden Drive, Suite 970
Beverly Hills, California 90210-4426

10

Tel:     310-435-7656
Fax:     310-657-2187

11

Attorney for Plaintiff Patrick Collins, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

to

PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED DISCOVERY

PRIOR TO A RULE 26(f) CONFERENCE

Patrick Collins, Inc. v. Does 1-3757, Case No. CV 10-05886 LB

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of NAME OF DISTRICT

| | |
|---|---|
| Plaintiff's Name _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  CV xx-xxxxxABC |
| | ) |
| Does 1-dddd _____ | ) (If the action is pending in another district, state where: |
| *Defendant* | ) Northern District of California  ⊙ ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Custodian of Records, Comcast Cable Communications, 650 Centerton Road, Moorestown, NJ 08057
To:

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:    Documents sufficient to identify the names, addresses, telephone numbers, and e-mail addresses of [ISP's] subscribers assigned the IP addresses identified on Attachment A on the corresponding dates at the corresponding times. You are to comply with this subpoena pursuant to the terms set forth in the Order attached hereto as Attachment B.

| Place: LAW OFFICES OF IRA M. SIEGEL | Date and Time: |
|---|---|
| 433 N. Camden Drive, Suite 970 Beverly Hills, California 90210-4426 | [Set Out  70  Days from Service] |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

| *CLERK OF COURT* | |
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Plaintiff's Name _____ , who issues or requests this subpoena, are:

Ira M. Siegel, LAW OFFICES OF IRA M. SIEGEL, 433 N. Camden Drive, Suite 970, Beverly Hills, California 90210
email: irasiegel@earthlink.net
Tel: 310-435-7656

**Exhibit 1, Page 1 of 5**

ATTACHMENT A

Table of Last-Observed Infringements by Defendants of Copyrights in Listed Motion Pictures that Are the Subject of Named Plaintiff's Listed Copyright Registrations

| Defendant | Internet Protocol Address (IP) | Internet Service Provider (ISP) | Motion Picture Title/ Copyright Registration No. | Timestamp (North American Eastern Time) | Software |
|---|---|---|---|---|---|
| Doe xx | zz.zz.zz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xx | zz.zzz.zzz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xx | zz.zzz.z.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xx | zz.zz.zzz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zz.zz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xxx | zz.zz.zzz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zz.zzz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zzz.zzz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xxx | zz.zz.zz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xxx | zz.zz.zzz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zzz.zzz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zzz.zz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zz.zzz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xxx | zz.zzz.zzz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |
| Doe xxx | zz.zzz.zz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.z.zzz.zzz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss AM | BitTorrent |
| Doe xxx | zz.zz.zz.zz | ISP Name | Title of Work PA C-CCC-CCC | mm/dd/yyyy hh:mm:ss PM | BitTorrent |

Attachment A, Page 1 of 1

ATTACHMENT B

1  Ira M. Siegel, Cal. State Bar No. 78142
   email address:  irasiegel@earthlink.net
2  LAW OFFICES OF IRA M. SIEGEL
   433 N. Camden Drive, Suite 970
3  Beverly Hills, California 90210-4426
   Tel:    310-435-7656
4  Fax:    310-657-2187

5  Attorney for Plaintiff's Name

6

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  Plaintiff's Name, a California corporation,      CASE NO. CV xx-xxxxx ABC

12              Plaintiff,         **ORDER GRANTING PLAINTIFF
                                   LEAVE TO TAKE EARLY
                                   DISCOVERY**
13       v.

14  DOES 1-dddd,

15              Defendants.

16

17

18      The Court, having reviewed Plaintiff's Ex Parte Application for Leave to Take Limited

19  Discovery Prior to a Rule 26 Conference and the supporting documents submitted therewith, and

20  good cause appearing therefore, hereby grants Plaintiff's Ex Parte Application and orders as

21  follows:

    **[Balance of order as set forth by the Court]**
22

23

24

25

26

27

28

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 10-04472 BZ

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**Exhibit 1, Page 4 of 5**

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

  **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

  **(i)** fails to allow a reasonable time to comply;

  **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

  **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

  **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

  **(i)** expressly make the claim; and

  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Exhibit 2

to

PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED DISCOVERY

PRIOR TO A RULE 26(f) CONFERENCE

Patrick Collins, Inc. v. Does 1-3757, Case No. CV 10-05886 LB

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CALL OF THE WILD MOVIE, LLC, <br><br> Plaintiff, <br><br> v. <br> DOES 1-1,062, <br><br> Defendants. | Civil Action No. 10-455 (BAH) <br> Judge Beryl A. Howell |
| MAVERICK ENTERTAINMENT GROUP, INC., <br><br> Plaintiff, <br><br> v. <br> DOES 1-4,350, <br><br> Defendants. | Civil Action No. 10-569 (BAH) <br> Judge Beryl A. Howell |
| DONKEYBALL MOVIE, LLC, <br><br> Plaintiff, <br><br> v. <br> DOES 1-171, <br><br> Defendants. | Civil Action No. 10-1520 (BAH) <br> Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

Currently before the Court are Time Warner Cable's (hereinafter "Time Warner")

Motions to Quash or Modify subpoenas that were issued in three pending copyright infringement

cases: *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-455 (hereinafter "*Wild*");

*Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-cv-569 (hereinafter "*Maverick*");

and *Donkeyball Movie, LLC v. Does 1-117*, No. 10-cv-1520 (hereinafter "*Donkeyball*"). In the

interest of judicial economy, this Memorandum Opinion will address and resolve the issues

1

related to Time Warner's motions to quash pending before the Court in all three of the captioned actions. In so doing, however, the Court emphasizes that these cases have not been consolidated for any purpose. This Memorandum Opinion, moreover, should in no way leave the parties with the impression that the Court views these cases as inextricably related; rather, with respect to Time Warner's pending motions to quash, the relevant factual allegations, legal theories and asserted burdens are the same and may be addressed in a unitary opinion.

Time Warner claims that the subpoenas issued to it in each of the three cases should be quashed due to the undue burden that Time Warner faces with compliance. *Wild*, ECF No. 7, May 13, 2010; *Maverick*, ECF No. 18, Nov. 22, 2010; *Donkeyball*, ECF No. 7, Dec. 13, 2010. Alternatively, Time Warner argues that the subpoenas should be substantially modified to require production of the requested information on a schedule that would likely take about three years. *See* Time Warner Mem. Supp. Mot. Quash, *Wild*, at 11, ECF No. 7 (requesting the Court to modify subpoena to limit Time Warner's production responsibilities to 28 IP addresses a month); *see generally* Time Warner Mem. Supp. Mot. Quash, *Maverick*, ECF No. 18, at 4-5; Time Warner Mem. Supp. Mot. Quash, *Donkeyball*, ECF No. 7, at 4-5. After reviewing Time Warner's Motions, the plaintiffs' opposition papers, the amicus briefs, supplemental filings, as well as the accompanying declarations and applicable law, the Court denies Time Warner's motions to quash in *Wild* and *Donkeyball* and grants Time Warner's Motion to Quash in *Maverick* because the plaintiff failed to serve Time Warner with its subpoena in accordance with Federal Rule of Civil Procedure 45(b).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

*Wild, Maverick*, and *Donkeyball* are cases in which copyright owners of separate movies allege that their copyrights are being infringed in the same manner. Specifically, the plaintiffs

allege that varying numbers of defendants, who are currently unnamed, are illegally downloading and distributing copyrighted works using a file-sharing protocol called BitTorrent. In *Wild,* the Amended Complaint, filed on May 12, 2010, accuses 1,062 unnamed Doe defendants of infringing the copyright of the motion picture *Call of the Wild*. *Wild*, ECF No. 6.  In *Maverick,* the Amended Complaint, filed on August 10, 2010, accuses 4,350 unnamed Doe defendants of infringing the copyrights of the motion pictures *13 Hours in a Warehouse, A Numbers Game, Border Town, Deceitful Storm, Fast Track No Limits, He Who Finds a Wife, Hellbinders, Locator 2, Smile Pretty (aka Nasty), Stripper Academy, The Casino Job, The Clique (aka Death Clique),* and *Trunk*. *Maverick*, ECF No. 9.  In *Donkeyball,* the Complaint, filed on September 8, 2010, accuses 171 unnamed Doe defendants of infringing the copyrights of the motion picture *Familiar Strangers*. *Donkeyball*, ECF No. 1.

The putative defendants in each case are alleged to have used a file sharing protocol called BitTorrent, which allows users to share files anonymously with other users.  When a user downloads a specific file through BitTorrent -- in this case, plaintiffs' copyrighted motion pictures -- data is transferred in a "piecemeal" fashion whereby "a different piece of the data [is received] from each user who has already downloaded the file . . . ."  Amended Compl., *Wild,* ¶ 3, ECF No. 6; Amended Compl., *Maverick,* ¶ 3, ECF No. 9; Compl., *Donkeyball,* ¶ 3, ECF No. 1; *see also* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2, Benjamin Perino Decl., ¶¶ 7-8; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, ECF No. 4, Benjamin Perino Decl., ¶¶ 7-8; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4, Benjamin Perino Decl., ¶¶ 7-8. The nature of the BitTorrent file-sharing technology "makes every downloader also an uploader of the illegally transferred file(s)." Amended Compl., *Wild,* ¶ 3, ECF No. 6; Amended Compl., *Maverick,* ¶ 4,

ECF No. 9; Compl., *Donkeyball*, ¶ 4, ECF No. 1.  Since users download material from a number

of other individuals, "every infringer is simultaneously stealing copyrighted material from many

ISPs in numerous jurisdictions around the country."  Amended Compl., *Wild*, ¶ 4, ECF No. 6;

Amended Compl., *Maverick*, ¶ 4, ECF No. 9; Compl., *Donkeyball*, ¶ 4, ECF No. 1.

 In an effort to combat illegal transfer of their copyrighted movies, the plaintiffs in *Wild*,

*Maverick*, and *Donkeyball* contracted with Guardaley Limited, an anti-piracy firm that uses

proprietary technology to identify BitTorrent users sharing the plaintiffs' copyrighted works.

*See* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2, Benjamin

Perino Decl., ¶ 10.[1]  The plaintiffs assert that Guardaley was able to identify the users that were

illegally sharing the plaintiffs' motion pictures, and then provided the plaintiffs with the alleged

infringers' Internet Protocol (IP)  addresses, as well as the date and time the alleged infringement

activity occurred.  *Id.*; *see also* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference,

*Wild*, ECF No. 2, Patrick Achache Decl., at ¶¶ 13-14.  The difficulty for the plaintiffs, however,

is that they have no identifying information for these alleged infringers aside from the IP

addresses that Guardaley supplied.

 To obtain certain identifying information for the putative defendants, plaintiffs moved for

expedited discovery. Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF

No. 2; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, ECF No. 4; Pl.'s

Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4. The Court in

each case granted plaintiffs leave to subpoena Internet Service Providers (ISPs) to compel

production of the names, addresses, emails, phone numbers, and Media Access Control numbers

---

[1] For clarity, this opinion will cite primarily to material docketed in *Wild*, No. 10-cv-455.  Plaintiffs are represented
by the same counsel, and the plaintiffs and Time Warner's briefs and filings in *Wild, Maverick, and Donkeyball*
generally assert the same claims and factual matters, differing only in the copyrighted material at issue, the putative
defendants and, in *Maverick*, assertion of a jurisdictional basis for quashing the subpoena. Any other differences will
be noted in the opinion.

Exhibit 2, Page 4 of 42

associated with the alleged infringing IP addresses that the plaintiffs identified as engaging in infringing distribution of their respective movies. Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, Apr. 15, 2010, ECF No. 4 (Urbina, J.); Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, No. 10-569, May, 24 2010, ECF No. 7 (Leon, J.); Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, Oct. 19, 2010, ECF No. 6 (Sullivan, J.). Time Warner received subpoenas for information relating to 224 Time Warner subscribers in *Wild*, 783 subscribers in *Maverick*, and 21 subscribers in *Donkeyball*.  Time Warner Mot. Quash, *Wild*, ECF No. 7, Ex. 1; Time Warner Mot. Quash, *Maverick,* ECF No. 18, Ex. 1; Time Warner Mot. Quash, *Donkeyball,* ECF No. 7, Ex. 1.  Time Warner responded by moving to quash the subpoenas on grounds that producing the requested information would impose an undue burden and expense. *Wild*, May 13, 2010, ECF No. 7; *Maverick*, Nov. 22, 2010, ECF No. 18; *Donkeyball,* Dec. 13, 2010, ECF No. 7. In support of Time Warner's motion to quash in *Wild*, amicus briefs were submitted collectively by Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital.  Minute Order, *Wild*, dated Jan. 3, 2011 (granting Amici leave to file amicus brief) (Urbina, J.).  Amici urge the Court to quash the subpoena issued to Time Warner based upon improper joinder, lack of personal jurisdiction over the putative defendants, and the putative defendants' First Amendment right to anonymity.

Following re-assignment to this Court, on March 1, 2011, the Court held a joint conference in these cases to hear oral argument on Time Warner's motions. Time Warner,

Amici, the plaintiffs, and an attorney representing three putative defendants participated.[2]  At the conference, the Court stated that it would accept supplemental filings in the case in order to more fully develop the record on the burdens faced by Time Warner.[3]  *See* Minute Order, *Wild*, March 9, 2011. Amici, plaintiffs, and Time Warner each filed supplemental material.

If the Court were to accept the Amici's arguments, not only would the Court quash the subpoenas directed toward Time Warner, but plaintiffs' cases would face significant obstacles.[4] For this reason, the Court addresses Amici's contentions before turning to Time Warner's arguments in support of quashing or modifying the plaintiffs' subpoenas.

## II.   AMICI'S CONTENTION THAT THE PUTATIVE DEFENDANTS ARE IMPROPERLY JOINED

Amici argue that the Court should quash the subpoenas directed to Time Warner because the plaintiffs have improperly joined the putative defendants.  *See* FED. R. CIV. P. 20(a)(2).  For the reasons stated below, the Court finds that the plaintiffs' allegations against the putative defendants in each case meet the requirements for permissive joinder.  After the putative

---

[2] Counsel identified his clients in *Maverick* as Lori Pearlman, Calvin Johnson, and Xu Xiangping.  Transcript of Mot. Hearing, at 52-53, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011)

[3] Counsel for Time Warner was unable to address certain questions posed by the Court during oral argument on Time Warner's Motions to Quash:
"MR. MALTAS: Well, as to the specifics of what's done in each location, I grant I'm not sure I can answer the question of what is done specifically at the central office and what is done specifically at regional offices. I do know that it requires work at both, and it requires --...-- people at both.
THE COURT:  One of the declarations said that at the regional office, it takes about 20 minutes per IP look-up to do something, but it doesn't exactly explain … what takes 20 minutes per IP look-up? What are they doing that takes 20 minutes?
MR. MALTAS: I don't want to give an answer that is not technically correct, and I don't know the answer to that, so I can go back and we can file a supplemental affidavit, if that would help the Court."
Transcript of Mot. Hearing, at 27-28, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011).

[4] Time Warner also raises the argument that its burdens are caused by the plaintiffs' "failure to observe jurisdictional limitations and improper joinder."  Time Warner Mem. Supp. Mot. Quash, *Maverick*, at 13-15 (addressing joinder and personal jurisdiction issues); Time Warner Mem. Supp. Mot. Quash, *Donkeyball*, at 13-15 (addressing joinder and personal jurisdiction issues); *see also* Time Warner Mem. Supp. Mot. Quash, *Wild*, at 10 (addressing joinder). Time Warner does not argue, however, that it is precluded from producing its subscribers' identifying information due to the putative defendants' First Amendment right to anonymity.  The Court addresses these issues *sua sponte* under its duty to supervise discovery in these cases. *See* FED. R. CIV. P. 26(b)(2)(C) ("On motion or *on its own*, the court must limit the frequency or extent of discovery otherwise allowed by these rules…")(emphasis added).

Exhibit 2, Page 6 of 42

defendants have been identified and named in the Complaints, the defendants may raise the argument that they are improperly joined under Federal Rule of Civil Procedure 20 and move to sever the joined defendants under Federal Rule of Civil Procedure 21.  Severance at this stage, however, as numerous other courts both in and outside this District have held, is premature.  *See, e.g., Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1 - 4,577*, No. 10-cv-00453, ECF No. 34 (D.D.C. July 2, 2010) (Collyer, J.); *West Bay One, Inc. v. Does 1-1653*, No. 10-cv-00481, ECF No. 25 (D.D.C. July 2, 2010) (Collyer, J.); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008) (Kollar-Kotelly, J.); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 n.7 (D. Mass. 2008); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004).

### A.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, defendants may be joined in one action when claims arise from the same transaction or occurrence or series of transactions or occurrences; and any question of law or fact in the action is common to all defendants.  FED. R. CIV. P. 20(a)(2); *see also Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. Jan. 30, 2008) (interpreting Rule 20(a)(1), which has the same requirements as Rule 20(a)(2)).

Permissive joinder is appropriate "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it."  *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002). The requirements for permissive joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action."  *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (quoting *Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W.Va. 1993));

*see also Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010).  Thus, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The remedy for improper joinder is severance under Federal Rule of Civil Procedure 21. This rule does not set forth what constitutes misjoinder, but "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)).  Courts have also read Rule 21 in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party. *Tenet*, 216 F.R.D. at 138 (citing *Brereton v. Commc'ns Satellite Corp.,* 116 F.R.D. 162, 163 (D.D.C.1987)); *see also* FED. R. CIV. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").   In addition to the two requirements of Rule 20(a)(2), the Court therefore also considers whether joinder would prejudice any party or result in needless delay.  *See Lane,* 2007 WL 2007493, at *7; *Tenet*, 216 F.R.D. at 138.

## B.  DISCUSSION

Consideration of the two requirements for permissive joinder under Rule 20(a)(2) and their application to the allegations in the Complaints in *Wild*, *Maverick*, and *Donkeyball* make clear that, at this procedural juncture, joinder of the putative defendants is proper.  Joinder will avoid prejudice and needless delay for the only party currently in the case, namely the plaintiff, and promote judicial economy.

### 1.   *Same Transaction, Occurrence, or Series of Transactions or Occurrences*

8

Rule 20(a)(2)(A) states that joinder is proper if "any right to relief is asserted against [the joined defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." This essentially requires claims asserted against joined parties to be "logically related." *Disparte*, 223 F.R.D. at 10.  This is a flexible test and courts seek the "broadest possible scope of action." *Lane*, 2007 WL 2007493, at *7 (quoting *Gibbs*, 383 U.S. at 724).  In the present case, the plaintiffs allege that the putative defendants in each case used the BitTorrent file-sharing protocol to illegally distribute the plaintiffs' motion pictures.  Amended Compl., *Wild*, ECF No. 6,  ¶12.  Amici counter, however, that engaging in "separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement" does not satisfy Rule 20(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. Mem. of Amici Curiae Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation and American Civil Liberties Union of the Nation's Capital in Supp. Time Warner's Mot. Quash, *Wild* (hereinafter "Amici Mem."), at 11-12, ECF No. 18.  Despite Amici's arguments, at this nascent stage of the case, the plaintiffs have sufficiently alleged that the infringing activity at issue in each of the cases may involve multiple computers, based in various jurisdictions, which are using the BitTorrent protocol to make available for sharing the same copyrighted content.

Specifically, the plaintiffs allege that the BitTorrent file-sharing protocol "makes every downloader also an uploader of the illegally transferred file(s).  This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file." Amended Compl., *Wild*, ¶3, ECF No. 6.  The plaintiffs further assert that the "nature of a BitTorrent protocol [is that] any

seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file." *Id.* at ¶ 4.

Based on these allegations, the plaintiffs' claims against the defendants are logically related. Each putative defendant is a possible source for the plaintiffs' motion pictures, and may be responsible for distributing the motion pictures to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material. *See Disparte*, 223 F.R.D. at 10 (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is "flexible."). While the defendants may be able to rebut these allegations later, the plaintiffs have sufficiently alleged that their claims against the defendants potentially stem from the same transaction or occurrence, and are logically related. *See Arista Records LLC v. Does 1-19,* 551 F. Supp. 2d 1, 11 (D.D.C.) ("While the Courts notes that the remedy for improper joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct.").

## 2. *Question of Law or Fact Common to All Defendants*

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. *See Disparte*, 223 F.R.D. at 11. The plaintiffs meet this requirement. In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders.

Furthermore, the plaintiffs allege that the putative defendants utilized the same BitTorrent file-sharing protocol to illegally distribute and download the plaintiffs' motion pictures and,

consequently, factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant.  Amended Compl., *Wild*, ¶ 3; Amended Compl, *Maverick*, ¶ 3; Compl., *Donkeyball*, ¶ 3.

The Court recognizes that each putative defendant may later present different factual and substantive legal defenses but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).

### 3.   *Prejudice to Any Party or Needless Delay*

Finally, the Court must assess whether joinder would prejudice the parties or result in needless delay.  At this stage in the litigation, the Court believes it will not. To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

Notably, as part of the motion to modify the subpoena, Time Warner asks the Court to intervene in a cost dispute with plaintiffs' counsel and require payment for each IP address for which the subpoena requires identifying information rather than payment per customer. Time Warner Mem. Supp. Mot. Quash, *Wild*, at 12, ECF No. 7.   The import of this request is that

some IP addresses may relate to the same person, who is engaged in the allegedly infringing activities claimed by plaintiffs. Severance of the putative defendants associated with different IP addresses may subject the same Time Warner customer to multiple suits for different instances of allegedly infringing activity and, thus, would not be in the interests of the putative defendants.

Moreover, the putative defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to the plaintiffs' allegations or assert a defense. The defendants may be able to demonstrate prejudice once the plaintiffs proceed with their cases against them, but they cannot demonstrate any harm that is occurring to them before that time.

The plaintiffs, by contrast, are currently obtaining identifying information from ISPs so that they can properly name and serve the defendants.  If the Court were to consider severance at this juncture, plaintiffs would face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their cases.  The plaintiffs would be forced to file 5,583 separate lawsuits, in which they would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit their ability to protect their legal rights.  This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action." *Lane*, 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party prejudiced by joinder).

Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect

their copyrights in a cost-effective manner.  Indeed, Time Warner urges the Court to sever the

defendants for this very reason. Time Warner asserts that, if joinder were disallowed, its burden

of complying with subpoenas would be diminished because the plaintiffs would not be able to

proceed against all of the putative defendants individually. *See* Transcript of Mot. Hearing, 14-

16, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011).

At this procedural juncture, the plaintiffs have met the requirements of permissive joinder

under Rule 20(a)(2).  The putative defendants are not prejudiced but likely benefited by joinder,

and severance would debilitate the plaintiffs' efforts to protect their copyrighted materials and

seek redress from the putative defendants who have allegedly engaged in infringing activity.

Courts are instructed to "entertain[] the broadest possible scope of action consistent with fairness

to the parties.'" *Lane*, 2007 WL 2007493, at *7. While this Court is fully cognizant of the

logistical and administrative challenges of managing a case with numerous putative defendants, a

number of whom may seek to file papers *pro se*, severing the putative defendants is no solution

to ease the administrative burden of the cases.  The Court therefore declines to sever the putative

defendants at this time.

## III.   AMICI'S CONTENTION THAT THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE PUTATIVE DEFENDANTS

Amici further argue that the Court should quash the subpoenas issued to Time Warner

because the plaintiffs have failed to properly establish personal jurisdiction over each putative

defendant.  Amici contend that the plaintiffs "failed to allege specific facts" to support

jurisdiction and that the likelihood of the defendants uploading or downloading the plaintiffs'

copyrighted movies in the District of Columbia is "exceedingly small."  Amici Reply Brief, at 5-

6, ECF No. 22.  Given that the defendants have yet to be identified, the Court believes that

evaluating the defendants' jurisdictional defenses at this procedural juncture is premature.

### A.  LEGAL STANDARD

To establish personal jurisdiction, the Court must examine whether jurisdiction is applicable under the District of Columbia's long-arm statute, D.C. CODE § 13-423, and must also determine whether jurisdiction satisfies the requirements of due process.  *See GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Due Process requires the plaintiff to show that the defendant has "minimum contacts" with the forum, thereby ensuring that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also GTE New Media Servs.*, 199 F.3d at 1347.

In cases where a party's contacts with the jurisdiction are unclear and the record before the court is "plainly inadequate," courts have allowed for a discovery period within which to gather evidence to support jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified.").  "This Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.,* 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and jurisdictional discovery is available when a party has "at least a good faith belief" that it has personal jurisdiction.  *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Courts have permitted discovery even when a party has failed to establish a prima facie case of personal jurisdiction.  *See GTE New Media Servs.*, 199 F.3d at 1351-52 (". . . as the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically.  Jurisdictional discovery will help to sort out these

matters."); s*ee also In re Vitamins Antitrust Litigation*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000)

(discussing *GTE New Media Servs.* and stating that "the D.C. Circuit held that although plaintiffs

had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell

whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to

pursue [discovery].").  In such cases, a party is entitled to pursue "precisely focused discovery

aimed at addressing matters relating to personal jurisdiction." *GTE New Media Services, Inc.*,

199 F.3d at 1351-52.

### B. DISCUSSION

Amici argue that the plaintiffs have failed to demonstrate with sufficient specificity the

basis for personal jurisdiction for each defendant.  To be sure, such a showing is certainly

required when parties are identified and named. The Court would then be able to evaluate

personal jurisdiction defenses.  The present situation, however, is different. Here, the plaintiffs

have only limited information about the putative defendants, namely their IP addresses and

information about the methodology used to engage in allegedly infringing activity. *See Id.* at

1352 (record before the court was "plainly inadequate" and "[j]urisdictional discovery will help

to sort out these matters.").  Without additional information, the Court has no way to evaluate the

defendants' jurisdictional defenses. *See, e.g., London-Sire Records, Inc. v. Doe 1*, 542 F. Supp.

2d 153, 180-181 (D. Mass. 2008) ("premature to adjudicate personal jurisdiction" and permitting

plaintiff to engage in jurisdictional discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F.

Supp. 2d. 556, 567 (S.D.N.Y. 2004) (evaluating personal jurisdiction premature without

defendants' identifying information).

Amici contend that the plaintiffs do not have a "good faith" basis to assert personal

jurisdiction over the putative defendants, and the Court should therefore not allow the defendants

to proceed with discovery.  According to Amici, such a good faith basis could be established by reliance upon geolocation information embedded in each IP address.  Specifically, Amici assert that IP addresses can be used to detect an individual's location and the plaintiffs should be forced to justify the putative defendants' personal jurisdiction by using tools "freely available to the public [that] help reveal where a person using a particular IP address is likely to be physically located."  Amici Mem., at 5. Amici cite 'reverse domain name service lookup' ("reverse DNS") and the American Registry for Internet Numbers (the "ARIN database") as tools that would help reveal where a specific IP address is "likely to be physically located." Amici Mem., *Wild*, ECF No. 11, Seth Schoen Decl., at ¶¶ 5, 13.

The Court rejects this argument for three reasons. First, as the Amici concede, publicly available IP lookups reveal only where a defendant is "likely" to be located.  *Id.* at ¶ 4.  Given that these lookup tools are not completely accurate, this does not resolve the question of whether personal jurisdiction would be proper. Ultimately, the Court would still be unable to properly evaluate jurisdictional arguments until the putative defendants are properly identified and named. *See Sony,* 326 F. Supp. 2d. at  567-68 ("Assuming personal jurisdiction were proper to consider at this juncture, the [publicly available IP lookup] techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located [outside this jurisdiction].  This, however, does not resolve whether personal jurisdiction would be proper.").

Second, the nature of the BitTorrent technology enables every user of the file-sharing protocol to access copyrighted material from other peers, who may be located in multiple jurisdictions "around the country," including this one. Amended Compl., *Wild*, ECF No. 6,  ¶ 4. Amici raise the prospect that the consequence of this theory is that any Internet user may be haled into court in any jurisdiction in the country for any online activity. Transcript of Mot.

Hearing at 34-35, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011) ("If merely placing information online were enough to establish personal jurisdiction in the District or anyplace their information could be obtained and downloaded and accessed, the limits on personal jurisdiction would be abolished."). While that broad prospect would indeed be troubling, that is not the situation here. *See generally GTE New Media Servs.*, 199 F.3d at 1350 ("[T]he advent of advanced technology, say, as with the Internet, should [not] vitiate long-held and inviolate principles of federal court jurisdiction."). The allegations in the Complaints in *Wild, Maverick* and *Donkeyball* do not involve general Internet access, but specific use of a file-sharing protocol that may touch multiple jurisdictions to effectuate a download of a single copyrighted work. Moreover, so far, no putative defendant has been named or "haled" before this Court. The plaintiffs in each case will be able to proceed only against those named defendants over whom this Court has personal jurisdiction.

Finally, at this juncture when no putative defendant has been named, the Court has limited information to assess whether any putative defendant has a viable defense of lack of personal jurisdiction or to evaluate possible alternate bases to establish jurisdiction. *See, e.g., London-Sire Records, Inc.*, 542 F. Supp. 2d at 181 ("Even taking all of the facts in [the putative defendant's] affidavit as true, it is possible that the Court properly has personal jurisdiction."); *Humane Soc'y of the United States v. Amazon.com, Inc.*, No. 07-623, 2007 U.S. Dist. LEXIS 31810, at *10 (D.D.C. May 1, 2007) ("[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum," quoting *Virgin Records Am., Inc. v. Does 1-35,* No. 05-1918, 2006 WL 1028956, at *3 (D.D.C. Apr. 18, 2006)). Certainly, the Court concurs with Amici that the putative defendants deserve to have dispositive

issues, such as personal jurisdiction, decided promptly. Amici Reply Brief, *Wild*, ECF No. 22, at 10. When the defendants are named, they will have the opportunity to file appropriate motions challenging the Court's jurisdiction and that will be the appropriate time to consider this issue. *See Virgin Records,* 2006 WL 1028956, at *3 (Amici's personal jurisdiction arguments rejected since "Defendant's Motion to Quash is without merit [] because it is premature to consider the question of personal jurisdiction in the context of a subpoena directed at determining the identity of the Defendant," citing *Elektra Entm't Grp., Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004); *Sony,* 326 F. Supp. 2d 556, 567-68 (S.D.N.Y.2004); *UMG Recordings v. Does 1-199*, No. 04-0093, at *2 (D.D.C. Mar. 10, 2004)).

The Court and parties are in no position yet to evaluate each putative defendant's specific connection with this jurisdiction. Quashing the subpoenas would effectively bar the plaintiffs' from obtaining discovery pertinent to that evaluation, and this Court declines to cut off jurisdictional discovery prematurely.

## IV.   THE PUTATIVE DEFENDANTS' FIRST AMENDMENT RIGHT TO ANONYMITY

Amici contend that the putative defendants' are entitled to First Amendment protection for their "anonymous communication." Amici Mem., at 14.  Amici request, therefore, that the Court consider whether the First Amendment prevents disclosure of the defendants' identifying information and whether the plaintiffs have demonstrated a need to override that protection.[5] Amici's request raises two questions for the Court to evaluate: First, are the putative defendants'

---

[5] Amici also urge the Court to "set an example of what appropriate procedures must be followed before individuals' identities can be disclosed," including that notice be required to be sent to a customer before identifying information is provided in response to the subpoenas. Amici Mem., *Wild*, ECF No. 18, at 14-19. Such notices are already provided.  Transcript of Mot. Hearing at 51, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (plaintiffs' counsel:  "Every single subpoena we sent to an ISP has [Amici's suggested] notice attached to it. And Time Warner, I believe, reached an agreement on the form of that notice . . . and every single subpoena we sent since that date in every new case has that notice.").

BitTorrent activities covered by the First Amendment right to engage in anonymous speech?

Second, if the First Amendment protects BitTorrent activity, does the plaintiffs' need for the

defendants' identifying information override that protection?

### A. THE DEFENDANTS' RIGHT TO ENGAGE IN ANONYMOUS BITTORRENT ACTIVITY

The First Amendment protects an individual's right to anonymous speech, *McIntyre v.*

*Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995) ("The freedom to publish anonymously

extends beyond the literary realm"), and this protection extends to anonymous speech on the

Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of

First Amendment scrutiny that should be applied to [the Internet]"); *accord*, *Sinclair v.*

*TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C. 2009) ("Such rights to speak anonymously

apply . . . to speech on the Internet.").  Although the right to anonymity is "an important

foundation of the right to speak freely," *London-Sire Records*, 542 F. Supp. 2d at 163, the right

to free speech is not absolute, and certain classes of speech, such as defamation, libel, and

obscenity, for example, are deemed to be beyond the purview of the First Amendment. *See*

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942)(". . . the right of free speech is not

absolute at all times and under all circumstances.  There are certain well-defined and narrowly

limited classes of speech, the prevention and punishment of which has never been thought to

raise any Constitutional problem."); *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952) (libel);

*Miller v. California*, 413 U.S. 15, 23 (1973) (obscenity).  Copyright infringement is not protected

by the First Amendment. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539,

555-57, 560 (1985) (discussing copyright, the fair use doctrine, and the First Amendment).

Amici argue, however, that the First Amendment protects "the anonymous publication of

expressive works on the Internet even where, as here, the publication is alleged to infringe

copyrights." Amici Mem., at 14. The question for this Court is whether the putative defendants are engaging in any expressive communication when they share files through BitTorrent that is entitled to some First Amendment protection of their anonymity.

While copyright infringement is not afforded First Amendment protection, file-sharing does involve aspects of expressive communication.  *See Sony,* 326 F. Supp. 2d at 564 ("the file sharer may be expressing himself or herself through the music selected and made available to others."); *see also London-Sire*, 542 F. Supp. 2d at 163 ("there are some creative aspects of downloading music or making it available to others to copy: the value judgment of what is worthy of being copied; the association of one recording with another by placing them together in the same library; the self-expressive act of identification with a particular recording; the affirmation of joining others listening to the same recording or expressing the same idea . . . . [W]hile the aspect of a file-sharer's act that is infringing is not entitled to First Amendment protection, other aspects of it are.").  File-sharers, for example, indicate the artistic works they prefer when they decide to share or download a particular file.  This expression can be noticed by other BitTorrent users and can indicate the relative popularity of particular files among a group of individuals.

File-sharers therefore do engage in expressive activity when they interact with other users on BitTorrent. The First Amendment interest implicated by their activity, however, is minimal given that file-sharers' ultimate aim "is not to communicate a thought or convey an idea" but to obtain movies and music for free. [6] *Sony,* 326 F. Supp. 2d at 564.  Even if expression were an

---

[6] Amici provide a declaration from Seth Schoen, in which Mr. Schoen states: "BitTorrent provides users with less ability to identify and communicate with the peers with whom they exchange files than other technologies do . . . . There is no easy way for the various BitTorrent users who have uploaded or downloaded parts of a file to recognize, name, or communicate with one another."  Amici Reply Brief, Seth Schoen Decl. in Support of Reply Brief ¶9, *Wild*, ECF No. 22.  Although this information was supplied to support Amici's contention that the putative defendants are improperly joined, it demonstrates rather that the putative defendants' BitTorrent activities deserve

ancillary aim, the underlying method of the users' communication is illegal. This Court therefore joins a number of other jurisdictions who have deemed that a file sharer's First Amendment right to anonymity is "exceedingly small." *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights."); *see also Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. DOES 1-4,577,* No. 10-453, 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ("the protection afforded to such speech is limited and gives way in the face of a prima facie showing of copyright infringement"); *West Bay One, Inc. v. Does 1-1653*, 270 F.R.D. 13, 16 n.4 (D.D.C. July 2, 2010) (utilizing same language as *Achte/Neunte,* 2010 U.S. Dist. LEXIS 94594, at *10 n.2); *Sony,* 326 F. Supp. 2d at 567 (First Amendment right of alleged file-sharers to remain anonymous "must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims."); *Elektra Entm't Group, Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y. Sept. 8, 2004) (finding that First Amendment right to anonymity overridden by plaintiff's right to protect copyright). Nevertheless, file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants' anonymity by compelling the production of these defendants' identifying information.  *See Sony,* 326 F. Supp. 2d at 564 ("Although this is not political expression entitled to the broadest protection of the First Amendment, the file sharer's speech is still entitled to some level of First Amendment protection.") (internal quotations omitted).

---

even less First Amendment protection because BitTorrent allows for less communication between users than other file-sharing programs.

### B.  PLAINTIFFS' NEED TO OVERRIDE FIRST AMENDMENT PROTECTIONS AND  IDENTIFY THE PUTATIVE DEFENDANTS

To assess whether the plaintiffs' subpoena should override the putative defendants' First Amendment rights, the Court uses the five-part test originally explicated in *Sony Music Entertainment v. Does 1-40*,[7] 326 F. Supp. 2d at 564-65. This test has been applied by numerous courts across the country and in this district to similar file-sharing copyright infringement actions. *See, e.g., Arista Records*, 551 F. Supp. 2d at 8 (D.D.C. 2008) (Kollar-Kotelly, J.); *Achte/Neunte,* 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. 2010) (Collyer, J.); *West Bay One,* 270 F.R.D. at 16 n.4 (D.D.C. 2010) (Collyer, J.); *London-Sire*, 542 F. Supp. 2d at 164 (D. Mass 2008); *Arista Records, LLC v. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *Virgin Records v. Doe*, No. 5:08-cv-389, 2009 U.S. Dist. LEXIS 21701 (E.D N.C. Mar. 16, 2009); *Elektra Entm't Group Inc. v. Does 1-9*, No. 04-cv-2289, 2004 WL 2095581, at *3-4 (S.D.N.Y. Sept. 8 2004). The *Sony* test calls for the court to assess whether the plaintiffs' need for identifying information outweighs the putative defendants' right to First Amendment anonymity by balancing: (1) the

---

[7] Amici urge the Court to adopt a more rigorous five-part balancing test that was originally set forth in *Dendrite International v. Doe*, a New Jersey state case that required: "(1) that the plaintiff undertake to notify the anonymous posters that they are the subject of a subpoena seeking their identity; (2) that the plaintiff specify the exact statement alleged to constitute actionable speech; (3) that the court review the complaint and other information to determine whether a viable claim against the anonymous defendants is presented; (4) that the plaintiff produce sufficient evidence to support, prima facie, each element of its cause of action; and (5) that the court then balance the First Amendment right of anonymous speech against the strength of the plaintiff's prima facie claim and the need for disclosure of the anonymous defendant's identity." *Dendrite Int'l v. Doe*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001); *see also Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) (discussing, but not adopting the *Dendrite* test) (Bates, J.). The *Dendrite* test was applied in a defamation case;  the case that discusses the *Dendrite* test in this district was also a defamation action.  *Sinclair*, 596 F. Supp. 2d 128 (defamation action in which plaintiff sought identifying information for three anonymous online posters).  This test has generally not been adopted in file-sharing cases. *See., e.g., London-Sire*, 542 F. Supp. 2d at 164 n.2 ("*Dendrite*, like many other cases involving internet speech, is not directly applicable to [file-sharing cases].  In that case, the plaintiff asserted that the anonymous defendant had defamed it on an internet bulletin board-an act much more clearly in the wheelhouse of the First Amendment's protections."); *Sony BMG Music Entm't v. Doe*, No. 5:08-109, 2009 WL 5252606, at *7 n.14 (E.D.N.C. Oct. 21, 2009)(" The protected speech at issue in *Dendrite* was allegedly defamatory comments posted on an internet bulletin, not the less expressive act of distributing music over the internet. In addition, the claim in *Dendrite* was for defamation, not copyright infringement, a unique area of particular federal concern."). The First Amendment interests implicated in defamation actions, where expressive communication is the key issue, is considerably greater than in file-sharing cases. The Court therefore believes that the *Sony* test is more applicable to the present case.

concreteness of the plaintiffs' showing of a prima facie claim of actionable harm; (2) the specificity of the plaintiffs' discovery request; (3) alternative means to get the information the plaintiffs seek; (4) the need for the information to advance the plaintiffs' claim; and (5) the objecting party's expectation of privacy. *Sony,* 326 F. Supp. 2d at 564-65.

### 1. Plaintiffs' Showing of a Prima Facie Claim

The first factor of the *Sony* analysis seeks to protect against gratuitous disclosure of identifying information when an individual's First Amendment anonymity rights are implicated. As one court noted, "people who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573, 578 (N.D. Cal. 1999) (pre-dating the *Sony* test, but recognizing the difficulty facing courts when confronted with civil subpoenas seeking disclosure of identifying information for anonymous Internet users). To this end, courts must ensure that plaintiffs have made a "concrete" showing of a prima facie claim. *Sony*, 326 F. Supp. 2d at 565. For the plaintiffs to establish a prima facie claim of copyright infringement, they must demonstrate: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

Plaintiffs have adequately demonstrated a prima facie claim of copyright infringement against the putative defendants. First, the plaintiffs allege that they are "holder[s] of the pertinent exclusive rights infringed by Defendants" and cite to certificates of copyrights issued by the Registrar of Copyrights. Amended Compl., *Wild*, ¶ 10; *see also* Amended Compl. *Maverick*, ¶ 9; Compl., *Donkeyball*, No. 10-1520, ¶ 10. The plaintiffs further assert that the putative defendants violated the plaintiffs' exclusive rights of reproduction and distribution when

they, "without the permission or consent of Plaintiff[s], distributed the Copyrighted Motion Picture[s] to the public, including by making available for distribution to others." *Id.* at ¶ 12. The plaintiffs support these allegations by supplying the date and time that the alleged infringement occurred, along with affidavits from Messrs. Benjamin Perino and Patrick Achache describing the process by which the defendants' infringement was observed, recorded, and verified.[8]  Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2, Benjamin Perino Decl., Patrick Achache Decl.;  Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, ECF Nos. 4-6, Benjamin Perino Decl., Patrick Achache Decl.; Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4, Benjamin Perino Decl., Patrick Achache Decl.  Accordingly, the plaintiffs have appropriately pled a prima facie claim of copyright infringement against the putative defendants.

### 2. *The Specificity of the Plaintiffs' Discovery Requests*

The second *Sony* factor weighs the specificity of the plaintiffs' requests for identifying information.  This factor is intended to keep the plaintiffs' request narrow so as to prevent overbroad discovery requests that "unreasonably invade[] the anonymity of users who are not alleged to have infringed . . . ." *London-Sires,* 542 F. Supp. 2d. at 178.  In *Wild, Maverick*, and *Donkeyball*, the Court granted the plaintiffs leave to subpoena ISPs for the putative defendants' name, current and permanent address, telephone number, e-mail address, and Media Access

---

[8] During oral argument, Amici noted that the declarations of Messrs. Perino and Achache submitted by plaintiffs in support of their motions for leave to take expedited discovery in *Wild* and *Maverick* are dated December 31, 2009, even though a number of the putative defendants are alleged to have engaged in infringing activity after that date. Transcript of Mot. Hearing, at 46-47, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011); *see also* Pl.'s Mot. Leave to Take Expedited Disc., *Maverick*, ECF No. 4, Benjamin Perino Decl., ¶ 11; Pl.'s Mot. Leave to Take Expedited Disc., *Donkeyball*, ECF No. 4, Benjamin Perino Decl., ¶ 11.  These declarations only purport to describe the procedures used to identify those accused of illegally distributing plaintiffs' motion pictures and, thus, the date of that description does not undercut the claims against the putative defendants, as Amici appear to imply.

Control address.  Order Granting Pl.'s Mot. Expedited Discovery, at 2, *Wild*, Apr. 15, 2010, ECF

No. 4; Order Granting Pl. Mot. Expedited Discovery, *Maverick*, May, 24 2010, ECF No. 7,;

Order Granting Expedited Discovery, *Donkeyball*, Oct. 19, 2010, ECF No. 6.  This information

will enable the plaintiffs to properly name and serve the putative defendants.  By court order, this

information "may be used by the plaintiff solely for the purpose of protecting the plaintiff's

rights as set forth in the complaint." *Id.*  These limited discovery requests, along with the

restrictions imposed by the Court, are specifically targeted to obtain the information plaintiffs

need to prosecute their lawsuits.

### 3. No Alternate Means to Obtain the Information

The third *Sony* factor inquires whether the plaintiffs have any other means to obtain the

defendants' identifying information other than compelling the information from ISPs.  The

plaintiffs state that without expedited discovery the "Plaintiff[s] ha[ve] no way of serving

Defendants with the complaint and summons in this case.  Plaintiff[s] do[] not have Defendants'

names, addresses, e-mail addresses, or any other way to identify or locate Defendants, other than

the unique IP address assigned to each Defendant by his/her ISP on the date and at the time of

the Defendant's infringing activity." Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f)

Conference, *Wild*, ECF No. 2, Benjamin Perino Decl., ¶ 11.  Amici and Time Warner do not

dispute that the plaintiffs have no other sources for the information they seek.

### 4. Plaintiffs' Need for the Information

The plaintiffs have sufficiently alleged prima facie claims of copyright infringement

against the putative defendants, and have also demonstrated that there are no alternate means to

obtain the defendants' identifying information.  Without this information from the ISPs, the

plaintiffs cannot name and serve those whom they allege to have infringed upon their copyrights.

Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild,* ECF No. 2, Benjamin

Perino Decl., ¶ 11.   ("Without expedited discovery . . . Plaintiff[s] [have] no way of serving

Defendants with the complaint and summons in this case.").   The putative defendants'

identifying information is therefore critical to the plaintiffs' cases.

   *5. The Putative Defendants' Expectation of Privacy*

   As previously discussed, the putative defendants have minimal First Amendment

protection against disclosure of their identities in the face of the plaintiffs' allegations that they

infringed the plaintiffs' copyrights.   Their expectation of privacy is similarly minimal in this

context.

   This conclusion is underscored by Time Warner's Terms of Service, which specifically

warns customers against engaging in illegal infringing activity, with the penalty of termination or

suspension of service:

> "Time Warner Cable's subscribers and account holders may not upload, post,
> transmit or otherwise make available on or via the Road Runner Service any
> material protected by copyright in a manner that infringes that copyright. In
> accord with the Digital Millennium Copyright Act, it is the policy of Time
> Warner Cable to terminate in appropriate circumstances the Road Runner Service
> of any subscriber or account holder who is a repeat infringer. . . . Time Warner
> Cable expressly reserves the right to terminate or suspend the service of any
> subscriber or account holder even for a single act of infringement."

Time Warner's Reply to Pl.'s Opposition to Time Warner's Mot. Quash, *Donkeyball,* ECF No.

16, at 8 n.2.

   Further, available on Time Warner's website is the Time Warner Cable Subscriber

Privacy Notice, which is provided to users "upon initiation of service and annually thereafter."

TIME WARNER CABLE SUBSCRIBER PRIVACY NOTICE (July 2010), *available at http://help.tw*

*cable.com/html/twc_privacy_notice.html.* This notice informs customers that Federal law

requires Time Warner to "disclose personally identifiable information to a governmental entity

or other third parties pursuant to certain legal process . . . [Time Warner] will comply with legal process when we believe in our discretion that we are required to do so.  We will also disclose any information in our possession to protect our rights, property and/or operations, or where circumstances suggest that individual or public safety is in peril." *Id.*

Time Warner informed its customers that it was monitoring for instances of copyright infringement, and if a customer did engage in such conduct, Time Warner would likely terminate or suspend the customer's service. Time Warner's privacy notice also explicitly informs customers that their information could be disclosed upon court order.  Thus, under these circumstances, the putative defendants have little to no expectation of privacy while engaging in allegedly infringing activities about which they are warned against. *See generally Sony*, 326 F. Supp. 2d at 566-67 (minimal expectation of privacy when ISP's terms of service prohibit copyright infringement and state that information can be relayed to law enforcement).

### C.  DEFENDANTS' FIRST AMENDMENT RIGHTS DO NOT PREVENT DISCLOSURE OF IDENTIFYING INFORMATION

Upon balancing the putative defendants' First Amendment rights to anonymity and the plaintiffs' need for the identifying information, the Court finds that the plaintiffs' need overrides the putative defendants' right to use BitTorrent anonymously.  The putative defendants' asserted First Amendment right to anonymity in this context does not shield them from allegations of copyright infringement.  The plaintiffs therefore may obtain from ISPs information identifying the putative defendants.

### V.    TIME WARNER'S MOTION TO QUASH

Having considered the arguments put forth by Amici in support of Time Warner's Motion to Quash, the Court turns to Time Warner's own arguments to quash the plaintiffs'

subpoenas pursuant to Federal Rule of Civil Procedure 45(c). Time Warner argues that producing the requested information would subject it to an undue burden and, if the subpoenas are not quashed, seeks to modify the subpoenas to limit Time Warner's compliance to production of identifying information for 28 IP addresses per month.[9]  For the reasons discussed below, Time Warner has failed to demonstrate that the burdens associated with producing the requested information justify quashing the plaintiffs' subpoenas or limiting Time Warner's production obligations.

## A.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45, the Court must quash a subpoena issued to a nonparty if the subpoena subjects the nonparty to an undue burden or expense.  FED. R. CIV. P. 45(c).  The nonparty seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed. *See Linder v. Dep't of Defense*, 133 F. 3d 17, 24 (D.C. Cir. 1998); *In re Micron Technology Inc. Securities Lit.*, 264 F.R.D. 7, 9 (D.D.C. 2010); *Achte/Neunte*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010).

Quashing subpoenas "goes against courts' general preference for a broad scope of discovery, [but] limiting discovery is appropriate when the burden of providing the documents outweighs the need for it."  *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (internal citations omitted).  When evaluating whether the burden of subpoena compliance is "undue," the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or

---

[9] Time Warner notes that another judge in this district also denied Time Warner's motions to quash in two file-sharing cases, but granted a protective order limiting Time Warner's subpoena production obligations in those cases to only 28 IP addresses a month. *See Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1 - 4,577*, No. 10-cv-00453, ECF No. 33 (D.D.C. July 2, 2010) (Collyer, J.); West *Bay One, Inc. v. Does 1-1653*, No. 10-cv-00481, ECF No. 24 (D.D.C. July 2, 2010) (Collyer, J.).  This Court is not bound by findings in other cases and, in any event, this Court evaluated information not directly considered by the other court, including Time Warner's efforts to preserve the requested information, and supplemental affidavits from plaintiffs, Time Warner, and Amici.

defenses at issue, the breadth of the discovery request, and the litigant's need for the information. *See id.* at 51; *Linder,* 133 F.3d at 24 ("Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation.") (internal quotations omitted); *Achte/Neunte*, 736 F. Supp. 2d at 214. The court must limit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). The 'undue burden' test also requires the court to be "generally sensitive to the costs imposed on third-parties." *In re Micron Tech.,* 264 F.R.D. at 9.

### B. EVALUATING TIME WARNER'S BURDEN

At the outset, Time Warner does not dispute that the identifying information sought by the subpoenas is critical to the plaintiffs' lawsuits since without production of this information, the plaintiffs are unable to name and serve the putative defendants. In addition, Time Warner does not claim that the subpoenas seek any more information than the Court authorized: namely, "information sufficient to identify each defendant, including his or her name, current and permanent address(es), telephone number(s), e-mail address(es), and Media Access Control address(es)." Order Granting Expedited Disc., *Wild*, ECF No. 4, Apr. 15, 2010; Order Granting Expedited Disc., *Maverick*, ECF No. 7, May, 24 2010; Order Granting Expedited Disc., *Donkeyball*, ECF No. 6, Oct. 19, 2010. Thus, the plaintiffs' requests are not unspecific, undefined or unduly broad. *Cf. North Carolina Right to Life*, 231 F.R.D. at 52 (quashing subpoena in part because discovery request sought "vast array of documents arising from 'contacts'" between parties).

Nevertheless, Time Warner characterizes plaintiffs' discovery demands as "overbroad." Time Warner Mem. Supp. Mot. Quash, *Wild*, at 12. The respective plaintiffs in these three cases subpoenaed Time Warner for information relating to a total of 1,028 IP addresses. Time Warner Mot. Quash, *Wild*, ECF No. 7, Ex. 1 (224 IP addresses); Time Warner Mot. Quash, *Maverick*, ECF No. 18, Ex. 1 (783 IP addresses); Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 1 (21 IP addresses). The overbreadth that Time Warner complains of is due to the large number of Time Warner's customers allegedly engaging in infringing activities and prompting the plaintiffs' need for their identifying information. This, however, does not render the subpoenas overbroad in terms of the information requested about each defendant.

Thus, Time Warner's principle contention is that, due to the large number of its customers allegedly engaging in online infringing activities, it would "suffer significant harms" and "incur significant costs" because compliance with requests for identifying information about those customers would "overwhelm" its capacity and "completely absorb the resources for many months." Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. dated Dec. 10, 2010, ¶¶ 9,12; *see also* Time Warner Mot. Quash, *Maverick*, ECF No. 18, Craig Goldberg Aff. dated Nov. 22, 2010, ¶¶ 9,12; Time Warner Mot. Quash, *Wild*, ECF No. 7, Craig Goldberg Aff. dated May 10, 2010, ¶¶ 7, 9. To support its motions, Time Warner initially submitted a single four-page affidavit by Craig Goldberg, Assistant Chief Counsel, Litigation and Time Warner's Chief Privacy Officer, in all three cases. This affidavit provided general and conclusory information about the Time Warner subpoena compliance process. Following oral argument on Time Warner's motions to quash, the company supplemented the record with an

additional affidavit.[10] Notwithstanding the supplemental affidavit, Time Warner has failed to demonstrate that complying with the plaintiffs' subpoenas would subject it to an undue burden.

Time Warner describes its subpoena compliance operations as follows: Within its legal department, Time Warner has a "subpoena compliance team" comprised of five full-time employees and one temporary employee who focus "exclusively" on responding to subpoena requests, court orders, and National Security Letters. Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Goldberg Aff. dated Dec. 10, 2010, at ¶ 3; *see also* Time Warner Mot. Quash, *Maverick*, ECF No. 18, Craig Goldberg Aff. dated Nov. 22, 2010; Time Warner Mot. Quash, *Wild*, ECF No. 7, Craig Goldberg Aff. dated May 10, 2010. In both its unsealed and sealed affidavits, Time Warner indicates that it received approximately 567 IP lookup requests a month, mostly from law enforcement, but does not specify over what period of time this was the average number.[11] *Id.* at ¶ 6. In both affidavits Time Warner also contends that it cannot divert any more resources toward responding to subpoena requests "without harming its efforts to assist law enforcement and overburdening [Time Warner's] subpoena response team." *Id.* at ¶ 8. Time Warner complains that, from February to December 2010, Time Warner "received over two

---

[10] Time Warner moved for, and the Court granted, leave to file a supplemental affidavit under seal because Time Warner represented that the supplemental affidavit relayed "highly proprietary" and "competitively sensitive information the disclosure of which could harm TWC's business interests," and prejudice both TWC and law enforcement. Time Warner's Mot. for Leave to File Affidavit Under Seal, *Wild*, ECF No. 38, March 17, 2011; Minute Order, *Wild*, March 22, 2011 (granting leave to file affidavit under seal); Time Warner's Mot. for Leave to File Affidavit Under Seal, *Maverick*, ECF No. 45, March 17, 2011; Minute Order, *Maverick*, March 17, 2011 (granting leave to file affidavit under seal); Time Warner's Mot. for Leave to File Affidavit Under Seal, *Donkeyball*, ECF No. 23, March 17, 2011; Minute Order, *Donkeyball*, March 17, 2011 (granting leave to file affidavit under seal). The sealed, supplemental affidavit contains certain information already provided to the Court in the initial, public affidavit, and the Court is hard-pressed to understand why the names of commercially available software and hardware equipment and tools used by Time Warner warrant sealing. Therefore, the Court will order Time Warner to review the sealed, supplemental affidavit and to file publicly a version from which Time Warner has redacted only the information that reflects clearly proprietary and security sensitive information. For each item redacted, Time Warner is required to provide the Court with an explanation specifying what makes the redacted information "proprietary" or "security sensitive."

[11] Time Warner states this was the average number of IP lookup requests "[p]rior to requests associated with file-sharing litigation." Without more specific information about the time period, it is unclear whether that was the average number over the past year, the past five years, or some other time period.

dozen subpoenas" for 4,100 IP lookups in file-sharing cases from "private litigants," *id.* at ¶ 7,

but provides no information about how many of these subpoenas originated from the plaintiffs or

plaintiffs' counsel.

Time Warner states that producing the information requested by the plaintiffs is a "multi-

step process" that "requires both centralized efforts at [Time Warner]'s corporate offices, as well

as efforts at the local operations center where the relevant subscriber is located." *Id. at* ¶ 5.  This

"multi-step process" is not unusual. Most consumer IP addresses are 'dynamic' as opposed to

'static.'  *See generally London-Sires*, 542 F. Supp. 2d at 160.  Static IP addresses are addresses

which remain set for a specific user.  *Id.*  Dynamic IP addresses are randomly assigned to

internet users and change frequently.  *Id.* Consequently, for dynamic IP addresses, a single IP

address may be re-assigned to many different computers in a short period of time.  *Id.*

Associating a dynamic IP address with a particular customer at a given moment makes the task

of "discovering the identity of a particular infringer more difficult." *Id.*; *see also U.S. v. Steiger*,

318 F.3d 1039, 1042 (11th Cir. 2003)("Static addresses are undoubtedly easier to trace, but ISPs

generally log the assignments of their dynamic addresses.").  This requires ISPs to maintain logs

and other records, and to use commercially available or customized software tools, to correlate

the IP address assigned to a computer at a specific moment with the subscriber's account

information in order to identify a customer from the IP address, either for the ISPs own internal

business purposes or to respond to subpoenas requesting identifying information about a

customer. *See, e.g., Klimas v. Comcast Cable Commc'n, Inc*., 465 F.3d 271, 275 (6th Cir.

2006)("dynamic IP addresses constantly change and unless an IP address is correlated to some

other information, such as Comcast's log of IP addresses assigned to its subscribers…, it does

not identify any single subscriber by itself.")(internal quotations omitted);

Time Warner describes the process as "time consuming and can require the work of multiple people at multiple locations." Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. at ¶5. This information, even when supplemented by Time Warner's sealed affidavit, does not support Time Warner's contention that compliance with the plaintiffs' subpoenas in *Wild, Maverick*, and *Donkeyball* subject it to an undue burden.  Time Warner concedes that in order to pursue its motions to quash it has already taken steps to isolate and preserve the information necessary to provide customer identifying information for the requested IP addresses. *See* Transcript of Mot. Hearing at 9, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (Time Warner's counsel states that its client has "incurred a substantial burden already" by preserving the data.).  It has been eleven months since Time Warner was issued a subpoena in *Wild*, six months since the subpoena in *Maverick* was issued, and four months since the subpoena in *Donkeyball* was issued.  Time Warner's Mot. Quash, *Wild*, ECF No. 7, Ex. 1, Subpoena dated April 30, 2010; Time Warner's Mot. Quash, *Maverick*, ECF No. 18, Ex. 1, Subpoena dated Sept. 14, 2010; Time Warner's Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 1, Subpoena dated Nov. 11, 2010.  In this timeframe, Time Warner accomplished "fifty-percent or more" of the work necessary to respond to the subpoenas by isolating and preserving the data. Transcript of Mot. Hearing, at 12, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (Time Warner's counsel stating that "something on the order of, you know, 50 percent or more [of the work] may have already been done").  If it took less than one year to complete fifty percent of the work, it is difficult to see why it will take over three more years, at 28 IP address lookups per month, to complete the production.

Time Warner's contention that it can only produce 28 IP addresses per month seems extraordinarily dilatory compared to the rate at which other ISPs are able to produce the

requested information. *See* Supplemental Declaration of Nicholas Kurtz, *Maverick*, ECF No. 42,

¶ 6 (relaying that in *Achte,* No. 10-cv-453 (D.D.C.) (Collyer, J.) and *West Bay One*, No. 10-cv-

481 (D.D.C.) (Collyer, J.) Comcast averaged 141 IP lookups a month, Charter averaged 199 IP

lookups a month, Cox averaged 113.43 IP lookups a month, and Verizon averaged 294.5 IP

lookups a month).  Time Warner's description of its "multi-step" process indicates that, in

addition to the five-person subpoena compliance team, employees in its regional offices are able

to assist in the process of identifying the customers associated with particular IP addresses. This

suggests that when confronted with a large volume of subpoenas for identifying information

about its customers that may strain its subpoena compliance team, Time Warner has additional

resources already on staff in regional offices to address the production.

     In addition, as part of the effort to resolve this discovery dispute without judicial

intervention, the plaintiffs' counsel offered to pay Time Warner to employ another temporary

worker to help respond to the plaintiffs' subpoena requests.  Transcript of Mot. Hearing at 64,

Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011) (plaintiffs' counsel

states: "As a quick aside, in prior negotiations, we have offered to basically pay for a temporary

employee. We have paid for the production, even though I argue -- and I think it is legitimate --

that we arguably don't have to pay for these productions because it is already part of their

business.").  Time Warner already employs a temporary worker to handle the volume of

subpoena requests it must process as part of its business operations. Thus, while the company is

under no obligation to accept this offer to defray costs, use of another temporary worker is not an

extraordinary or unusual solution but instead consistent with its normal business practice to

facilitate timely compliance with subpoenas.

Time Warner included with its general description of the subpoena compliance process a summary statement that the cost of producing identifying information for one IP address is $45. Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. at ¶ 11.  The study underlying this cost estimate contains no detail about the process used for subpoena compliance, but only general numbers regarding total employee compensation and alleged time spent responding to IP lookup requests.  Pl.'s Opposition Time Warner's Mot. Quash, *Wild*, ECF. No. 9, Ex. 2.  Based on this estimate, the total cost to produce information in *Wild* would be "approximately $10,080," Time Warner Mem. Supp. Mot. Quash, *Wild,* ECF No. 7, at 9, and in *Maverick* and *Donkeyball* approximately "$36,180 (804 IP x $45 IP addresses), plus the costs of notifying each subscriber." Time Warner Mem. Supp. Mot. Quash, *Donkeyball,* ECF No. 7, at 9-10.

When granting the plaintiffs leave to subpoena ISPs, the Court allowed the ISPs to charge the plaintiffs for the costs of producing the requested information.  Order Granting Pl.'s Mot. for Expedited Discovery, *Wild*, ECF No. 4, April 15, 2010, at 3-4 ("ORDERED that any ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP . . ."); Order Granting Pl.'s Mot. for Expedited Discovery, *Maverick*, ECF No. 7, May 24, 2010, at 3 ("ORDERED that any ISP which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP. . .) ; *See also* Order Granting Pl.'s Mot. for Expedited Discovery, *Donkeyball*, ECF No. 6, Oct. 19, 2010 (not specifically mentioning billing provision, but see Pl.'s Mot. for Expedited Discovery, *Donkeyball*, ECF No. 4, Ex. 3, Text of Proposed Order, at 2). In so far as Time Warner argues

that cost alone serves as a basis to quash plaintiffs' subpoenas, that position is unavailing since the plaintiffs will cover the cost, per the court order.

Time Warner has failed to demonstrate that compliance with the plaintiffs' subpoena requests would impose an undue burden. Although Time Warner asserts that producing the requested information is a "multi-step process," it admits that "more than fifty percent" of the work has already been done, with the identifying information subject to the subpoena isolated and preserved. The Court sees no reason why Time Warner cannot expeditiously complete the processing of this information for production to the plaintiffs.

Time Warner's motions to quash in *Wild, Maverick*, and *Donkeyball* on the basis that the subpoenas are unduly burdensome are therefore denied.

### C. TIME WARNER'S ALTERNATE ARGUMENTS TO QUASH PLAINTIFFS' SUBPOENAS

In *Wild* and *Maverick*, Time Warner proffers additional arguments to quash the plaintiffs' subpoenas. In *Wild*, Time Warner (1) asserts that plaintiffs' counsel breached an agreement that limited subpoena requests to 28 IP addresses a month, and (2) requests the Court to alter the parties' costs arrangement so as to order the plaintiff to pay Time Warner in advance of producing the requested information. Time Warner Mem. Supp. Mot. Quash, *Wild*, ECF No. 7, at 8, 11-12. In *Maverick*, Time Warner contends that the plaintiff did not properly serve Time Warner with its subpoena. Time Warner Mem. Supp. Mot. Quash, *Maverick*, ECF No. 18, at 15-17.

Time Warner has failed to demonstrate that the plaintiffs' subpoenas should be quashed in *Wild*. In *Wild*, there was no meeting of the minds between plaintiffs' counsel and Time Warner; and the Court additionally declines to alter the cost arrangement previously ordered by the Court. In *Maverick*, however, the plaintiff did not abide by the Federal Rules of Civil

Procedure when serving its subpoena.  Time Warner's Motion to Quash in *Maverick* is therefore granted.

### 1. Purported Agreement to Limit Production in Wild

The Court first dispenses with Time Warner's argument that the Court should quash the plaintiff's subpoena in *Wild* because of a purported agreement with plaintiff's counsel to limit Time Warner's subpoena production to 28 IP addresses a month.  In the District of Columbia, a valid contract requires "both (1) agreement as to all material terms; and (2) intention of the parties to be bound."  *T Street Development, LLC v. Dereje and Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009). The Court primarily looks to intent of the parties entering into the agreement. *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 194 (D.C. 1990).  Intent is an objective inquiry that the Court assesses by asking "what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (quoting *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984)).  The burden of proof that a contract exists falls on the party attempting to enforce the agreement. *See Novecon Ltd. v. Bulgarian-American Enterp. Fund*, 190 F.3d 556 (D.C. Cir. 1999).

Time Warner argues that it reached a "negotiated agreement" with plaintiffs' counsel that Time Warner would provide the plaintiff with information for 28 IP addresses a month "with the specific acknowledgement that it applied to all future subpoenas that [plaintiffs' counsel] served on [Time Warner]."  Time Warner Mem. Supp. Mot. Quash, *Wild*, at 8.  This agreement was not memorialized in a signed document, but rather, according to Time Warner, was negotiated and agreed to in string of emails dated March 19, 2010 discussing subpoena production in other file-sharing cases. Time Warner's Mot. Quash, *Wild*, ECF No. 7, Ex. 3.  The Court has reviewed the emails cited by Time Warner and finds that there was no meeting of the minds and no evidence

that plaintiff's counsel agreed to limit Time Warner's obligations under the subpoenas to production of 28 IP addresses a month for all his clients, present and future.  On the contrary, the last email sent by plaintiff's counsel Thomas Dunlap makes clear that he anticipated additional requests for IP lookups.  *Id.*, Ex. 3 (email from Thomas M. Dunlap to Craig Goldberg Re: Subpoenas to TWC, dated March 19, 2010, 3:47 PM states: "[w]e may need to request more subpoenas, however we will discuss this with you before we send it over so we can work out a timetable and method.")  Time Warner's contention that a prior agreement limits Time Warner's subpoena compliance obligations in *Wild* is therefore unsuccessful.

### 2. Cost-Shifting in Wild

In *Wild,* Time Warner requests that the Court alter the cost arrangement set forth in the Court's April 15, 2010 order, in which the Court granted the plaintiff leave to subpoena ISPs for identifying information regarding the putative defendants. Order Granting the Plaintiff's Mot. for Expedited Discovery, *Wild*, ECF No. 4.  In that Order, the Court specifically stated that:

> "**. . .** any ISP that receives a subpoena pursuant to this Memorandum Order shall *not assess any charge to the plaintiff before providing the information* requested in the Rule 45 subpoena, nor shall the ISP assess a charge to the plaintiff in connection  with IP addresses that are not controlled by that ISP, *duplicate IP addresses that resolve to the same individual*, other IP addresses that do not provide the name and other information requested of a unique individual or for the ISP's internal costs incurred to notify the ISP's customers; and it is
>
> **ORDERED** that any ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP . . ."

*Id.* at 3-4 (emphasis supplied). Time Warner now requests that the Court alter that arrangement so that Time Warner is paid in advance of providing the requested information to the plaintiff, and is paid "on a per-IP-address basis, rather than per subscriber." Time Warner Mem. Supp. Mot. Quash, *Wild*, at 11-12.  Time Warner has proffered no complaints about plaintiffs' inability

or refusal to pay for subpoena compliance that would justify alteration of the order to a pre-payment plan.  Nor does Time Warner contend that it is under such a financial hardship that pre-payment is required.

No other ISP subpoenaed by the plaintiff in *Wild* has come forward requesting that the order to be modified on grounds that this cost arrangement is unfair and the Court declines to make an exception for Time Warner, particularly given the paucity of the reasons proffered for the requested changes.

### 3. Improper Service of the Plaintiff's Subpoena in Maverick

As an alternate basis to quash the plaintiff's subpoena in *Maverick*, Time Warner asserts that the plaintiff did not serve its subpoena in accordance with Rule 45(b) of the Federal Rules of Civil Procedure.  Specifically, Time Warner asserts that the plaintiff faxed and emailed Time Warner the *Maverick* subpoena, but never delivered the subpoena to a named person.

Under Federal Rule of Civil Procedure 45(b), "serving a subpoena requires delivering a copy to the named person."  The "longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.  The use of the word "delivering" in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2454 (2010).  A minority of courts have broadened the interpretation of Rule 45(b) and held that personal in-hand service is not required.  *See, e.g., Hall v. Sullivan*, 229 F.R.D. 501, 506 (D. Md. 2005) ("no reason to require in-hand delivery of subpoenas [*duces tecum*]-so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness.").  Courts in this jurisdiction have not followed this path.  *See, e.g., U.S. v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 36-37 (D.D.C. 2004) (stating that "FED. R. CIV. P. 45(b) (1) requires personal service of deposition

39

subpoenas" and quashing subpoenas left in the party's mail room); *Alexander v. F.B.I.*, 186

F.R.D. 128, 130 (D.D.C. 1998) (stating that it is "well settled that, under FED. R. CIV. P. 45(b),

[the non-party's] deposition subpoena must have been personally served upon him").

It is undisputed that in *Maverick* plaintiff's counsel forwarded the subpoena as an

attachment to an email to Time Warner's counsel on September 14, 2010.  Pl.'s Opp'n To Time

Warner Mot. Quash, ECF No. 22, Ex. 1 (email from Nicholas Kurtz to Alexander Maltas dated

Sept. 14, 2010, 3:53 PM).  In the text of the email, plaintiff's counsel asked Time Warner's

counsel to accept service by email of the plaintiff's subpoena.  *Id.*  The following day, Time

Warner's counsel responded via email that he was not authorized to accept such service. Time

Warner's Mot. Quash, *Maverick*, ECF No. 18, Ex. 5 (Letter from Alexander Maltas to Thomas

Dunlap and Nicholas Kurtz dated October 13, 2010).  Despite this disavowal of service, a week

later, on September 22, 2010, a Time Warner representative named "Tammi" called plaintiff's

counsel and told him that she would be working on the subpoena and requested that he email a

copy to her. Pl.'s Opp'n Time Warner's Mot. Quash, *Maverick,* ECF No. 22, Nicholas Kurtz

Decl., ¶ 4 and Ex. 2 (Kurtz email to 'subpoena.compliance@twccable.com' dated Sept. 22, 2010:

"Pursuant to my telephone conversation with Tammi, attached is the Excel spreadsheet for the

Maverick civil subpoena. I have also attached a PDF of the subpoena for your convenience.").

On October 13, 2010, Time Warner sent the plaintiff a letter stating that Time Warner had yet to

be properly served with plaintiff's subpoena in *Maverick*. Time Warner's Mot. Quash, *Maverick*,

ECF No. 18, Ex. 5 (Letter from Alexander Maltas to Thomas Dunlap and Nicholas Kurtz, dated

October 13, 2010).  Nevertheless, the plaintiff did not take steps to deliver the subpoena

personally and relied solely upon service by fax and email.[12]

---

[12] Plaintiff argues that Time Warner's "own subpoena compliance website states that [Time Warner] 'accepts lawful
process by fax.'" Pl.'s Mem. Opp'n Time Warner's Mot. Quash, *Maverick*, ECF No. 22, at 16;  Kurtz Decl., Ex. 6

The Federal Rules of Civil Procedure requires personal service of subpoenas.  *See* FED. R. CIV. P. 45(b) (1).  The Court acknowledges that strict adherence to the literal interpretation of Rule 45(b)(1) may place form over substance, particularly when, as here, the subpoenaed party acknowledges that it received the subpoena at issue and has a history of  multiple contacts over subpoena compliance with the sender of the subpoena.  At the same time, however, the plaintiff is required to comply with Rule 45(b) (1).

In a last gasp effort to avoid the quashing of the subpoena in *Maverick*, plaintiff's counsel argues -- without citation to any legal authority for this waiver argument -- that Time Warner's filing of the instant motion constitutes a waiver of its jurisdictional claim of improper service. Pl.'s Mem. Opp'n Time Warner's Mot. Quash, ECF 22 at 16. This argument is specious. The federal rules permit defendants to simultaneously seek relief and raise a jurisdictional defense without waiver. *See* FED. R. CIV. P. 12(b)(2), (4)-(5) (defendant may move for dismissal based on the court's lack of personal jurisdiction, the insufficiency of process, or the insufficiency of service of process). It simply would be unfair to treat a motion premised on a jurisdictional objection as simultaneously operating as a waiver of that very objection. *United States v. Ligas*, 549 F.3d 497, 503 (7th Cir. 2008) (party's motion to quash does not mean that by making the motion he waived his objection to personal jurisdiction, citing *PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 461 (5th Cir. 2001);  *Neifeld v. Steinberg*, 438 F.2d 423, 425 n.4 (3d Cir. 1971) (declining to find defendant waived jurisdictional objection

---

(TIME WARNER CABLE,  NOTES FOR LAW ENFORCEMENT AND PSAPs WHEN SERVING SUBPOENAS, COURT ORDERS, AND OTHER LAWFUL PROCESS ON TIME WARNER CABLE SEEKING HIGH-SPEED DATA (INTERNET), TELEPHONE, AND VIDEO SUBSCRIBER DATA (Nov. 16, 2010), *available at* http://www.timewarnercable.com/corporate/subpoena compliance.html.).  The website referenced by plaintiff provides guidance only for subpoena requests from "law enforcement and PSAPs." PSAP is an acronym for "Public Safety Answering Points," which are emergency call centers responsible for answering calls for police, firefighters, and ambulance services.  The website does not apply to the subpoenas issued in civil legal proceedings and is not intended to apply to the plaintiff.  Plaintiff's contention that Time Warner waived FED. R. CIV. P. 45(b)'s requirements for proper service for all subpoena requests through directions to law enforcement and emergency personnel on this website is therefore baseless.

Exhibit 2, Page 41 of 42

when it filed a motion to extinguish a writ of attachment and a motion to dismiss for lack of jurisdiction).

The Court grants Time Warner's motion to quash the subpoena in *Maverick* because the plaintiff did not abide by the requirements of Rule 45(b)(1) and personally serve its subpoena to a named person.  The plaintiff is granted leave to re-issue its subpoena to Time Warner within ten days from entry of the order quashing the subpoena.  If plaintiff fails to serve its subpoena within 10 days and file proof of service with the Court, the putative defendants listed in the plaintiff's original subpoena to Time Warner, dated September 14, 2010, shall be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Court DENIES Time Warner's Motions to Quash the Subpoena in *Wild*, No. 10-cv-455, and *Donkeyball*, No. 10-cv-1520; and GRANTS Time Warner's Motion to Quash in *Maverick*, No. 10-cv-569.   An Order consistent with this Memorandum Opinion will be entered.

**SO ORDERED**.

March 22, 2011                                    /s/ *Beryl A. Howell*
                                                             BERYL A. HOWELL
                                                             United States District Judge